DECISION AND JUDGMENT
{¶ 1} Defendant-appellant, Jennifer Jeavons, appeals the November 15, 2007 and October 17, 2007 judgments of the Erie County Court of Common Pleas which granted plaintiff-appellee Firelands Regional Medical Center's ("Firelands") motion to dismiss *Page 2 
appellant's class action counterclaim.[1] For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} The facts of this case are as follows. On September 10, 2004, in Sandusky Municipal Court, appellee commenced a collection action against appellant, an uninsured patient, for services rendered on December 8, 2003, and April 6 and April 13, 2004. The amount totaled $1,914.96, plus interest. Thereafter, appellee amended its claim to add service dates, May 11 and May 22, 2004, for a sum of $2,878.96, plus interest.
 {¶ 3} On October 7, 2004, appellant filed her answer and class-action counterclaim; on October 18, 2004, appellant filed an amended pleading. In appellant's answer she admitted to receiving the alleged services but stated that the amounts billed were "far in excess of the reasonable, usual and customary rates for the services rendered." Appellant's class-action counterclaim alleged that she is a member of a class of uninsured individuals who received medical care at Firelands from 1989 to present and were "charged in excess of the usual, customary, and reasonable charges for such treatment and/or services." Appellant then raised the following five causes of action: (1) declaratory and injunctive relief; (2) breach of contract; (3) unjust enrichment; (4) breach of duty of good faith and fair dealing; and (5) violations of the Ohio Consumer Sales Practices Act ("OCSPA"), R.C. 1345.02 and .03.
 {¶ 4} On November 15, 2004, appellee filed a motion to dismiss appellant's counterclaim. Appellee argued that appellant's breach of contract claim should be *Page 3 
dismissed because appellant failed to allege any fact to show that the amounts she was charged were unreasonable. Appellee further argued that appellant failed to allege damages. Regarding the breach of fiduciary duty claim, appellee contended that the duty to act in "good faith" was subsumed in the contract claim and had no independent basis for recovery. Appellee further argued that because appellant failed to make any payment of the amounts owed, appellee could not be unjustly enriched. As to the OCSPA claim, appellee argued that because appellant failed to allege that appellee made any misrepresentations or that volume price discounts are unfair or unconscionable, the claim should be dismissed. Finally, appellee argued that appellant failed to state a claim for injunctive relief.
 {¶ 5} On December 13, 2004, appellant filed her memorandum in opposition to appellee's motion to dismiss. As to her breach of contract claim, appellant argued that appellee breached the implied term in the contract that appellant would be charged the reasonable value of the services. Appellant further argued that she was damaged by being the subject of an action to collect an improper debt. With regard to appellant's claim for breach of good faith and fair dealing, appellant argued that it is an independent cause of action which was sufficiently pled. Appellant next argued that appellee was unjust enriched by "virtue of the inflated debt which encumber[s] Defendants." According to appellant, her OSCPA claim was sufficiently pled because appellee, a supplier of medical services, engaged in a one-sided consumer transaction with individuals who could not pay the inflated charges. Finally, appellant argued that she was entitled to injunctive relief based upon her OCSPA claim. *Page 4 
 {¶ 6} On May 23, 2005, appellant moved for an order pursuant to Civ. R. 36(A) to deem her unanswered requests for admissions as admitted. In her memorandum, appellant stated that on April 7, 2005, appellant served appellee with requests for admissions and that appellee had yet to answer or request an extension of time to answer.
 {¶ 7} On May 26, 2005, appellee filed an amended motion for an extension of time. In its motion, appellee stated that it inadvertently omitted the requests for admissions in its May 16, 2005 motion for an extension of time to respond to discovery. On May 27, 2005, the trial court granted appellee's request for an extension of time.
 {¶ 8} While appellee's motion to dismiss was pending, by stipulation of the parties the case was transferred to the Erie County Court of Common Pleas. On July 19, 2005, appellee filed a renewal of its motion to dismiss and requested that all discovery pertaining to appellant's class-action counterclaim be held in abeyance during the pendency of the motion.
 {¶ 9} On July 27, 2005, appellant filed her memorandum in opposition to appellee's renewed motion to dismiss; she renewed her prior arguments relating to appellee's motion to dismiss. On April 10, 2007, the case was transferred to a different court's docket. At the June 5, 2007 scheduling conference it was decided that the parties' memoranda would be resubmitted to include updated case law.
 {¶ 10} On October 17, 2007, the trial court granted appellant's Civ. R. 12(B)(6) motion to dismiss. The court found that appellant failed to allege that she performed under the contract with appellee or that she was damaged. The court further found that *Page 5 
appellant was not unjustly enriched because she failed to confer a benefit to appellee. With regard to the OCSPA claim, the court concluded that appellant failed to allege any affirmative misrepresentation or element of unfair dealing. The court further noted that appellant failed to sufficiently allege that appellant engaged in an unconscionable act or practice. Based upon the trial court's prior conclusions, the court also rejected appellant's claim for injunctive relief.
 {¶ 11} On November 15, 2007, the court, pursuant to Civ. R. 54(B), found that its October 17, 2007[2] judgment was a final and appealable order. This appeal followed.
 {¶ 12} Appellant raises the following two assignments of error for our consideration:
 {¶ 13} "Assignment of Error No. 1:
 {¶ 14} "The trial court erred as a matter of law in dismissing defendant's class action counterclaim.
 {¶ 15} "Assignment of Error No. 2:
 {¶ 16} "The trial court erred as a matter of law in denying defendant's motion for a ruling pursuant to Civ. R. 36 and in denying defendant's motion for reconsideration of the same."
 {¶ 17} Appellant's first assignment of error challenges the trial court's dismissal of her counterclaim. At the outset we note that this court's standard of review for dismissals *Page 6 
granted pursuant to Civ. R. 12(B)(6) is de novo. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." State ex rel. Hanson v.Guernsey Cty. Bd. of Commrs. (1992), 65 Ohio St.3d 545, 548. Under Civ. R. 12(B)(6), failure to state a claim, the court must determine whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.Guess v. Wilkinson (1997), 123 Ohio App.3d 430, 434. In reaching its decision on a Civ. R. 12(B)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff, must presume all of the factual allegations in the complaint as true, and must make all reasonable inferences in favor of the plaintiff. State ex rel. Seikbertv. Wilkinson (1994), 69 Ohio St.3d 489, 490. However, "`unsupported conclusions of a complaint are not considered admitted and are not sufficient to withstand a motion to dismiss.'" Phelps v. Office ofAttorney Gen., 10th Dist. No. 06AP-751, 2007-Ohio-14, ¶ 4, quotingState ex rel. Seikbert v. Wilkinson, 69 Ohio St.3d at 490.
 {¶ 18} For clarity, as did the parties, we will address each claim separately.
 Breach of Contract {¶ 19} Generally, in order to recover for a breach of contract claim a plaintiff must show "`the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff"Nilavar v. Osborn (2000), 137 Ohio App.3d 469, 483, quoting Doner v.Snapp (1994), 98 Ohio App.3d 597, 600. *Page 7 
 {¶ 20} Appellant contends that because appellee filled in the open price term of the contract with an unreasonable sum and then commenced a lawsuit against appellant to enforce the contract, it resulted in an anticipatory breach. Appellant further argues that she was monetarily damaged by having to defend a lawsuit improperly commenced against her for inflated medical bills.
 {¶ 21} Appellee argues that appellant's allegation that the charges were "unreasonable" is merely a conclusory statement, not a factual one, and need not be considered when ruling on a motion to dismiss. Appellee further contends that appellant has sustained no damages and, thus, cannot maintain a breach of contract claim.
 {¶ 22} In the instant case, prior to treatment appellant signed a form which guaranteed payment for services. It provided, in part: "I agree to pay in full any and all charges for hospital and provider services not otherwise covered by insurance or other benefits. I authorize payment directly to Firelands Community Hospital and/or providers of all healthcare benefits and/or group benefits, including Medicare benefits, otherwise payable to me, but not to exceed the hospital's charges for this period of hospitalization or treatment. * * *."
 {¶ 23} As stated above, appellant argues that appellee, by filling in the open price term of the contract with an unreasonable sum, engaged in an anticipatory breach of the contract. In support, appellant cites this court's case captioned W.O.M. Ltd. v. Willys-Overland Motors, Inc., 6th Dist. No. L-05-1201, 2006-Ohio-6997. In W.O.M., we concluded that an anticipatory breach occurred where the appellants declared their *Page 8 
intention of not performing under the settlement agreement; thus, the trial court did not err in finding a breach of the agreement in the appellee's favor. Id. at ¶ 30. We stated: "An anticipatory breach occurs when there is a repudiation of the promisor's duty under the contract prior to the time fixed for performance." (Citation omitted.) Id. Further, the repudiation must be expressed in clear and unequivocal terms. McDonald v. Bedford Datsun (1989), 59 Ohio App.3d 38, 40.
 {¶ 24} Appellant's claim that appellee charged uninsured patients unreasonable amounts does not, in our view, amount to a "clear and unequivocal" repudiation of the contract. Certainly, appellant, after receiving the benefit of medical services, was not entitled to pay nothing. What is considered "reasonable" is too amorphous for this (or, in our opinion any) court to determine. Rather, we find persuasive the United States Third Circuit Court of Appeals' reasoning in DiCarlo v.St. Mary Hosp. (C.A.3 2008), 530 F.3d 255, 264, which adopted the lower court's decision stating:
 {¶ 25} "This case, and other similar cases being brought throughout the country, arise out of the anomalies which exist in the American system of providing health care. A court could not possibly determine what a `reasonable charge' for hospital services would be without wading into the entire structure of providing hospital care and the means of dealing with hospital solvency. These are subjects with which state and federal executives, legislatures, and regulatory agencies are wrestling and which are governed by numerous legislative acts and regulatory bodies. For a court to presume to address these problems would be rushing in where angels fear to tread. What Plaintiff is asking the *Page 9 
Court to do here is, put simply, to solve the problems of the American health care system, problems that the political branches of both the federal and state governments and the efforts of the private sector have, thus far, been unable to resolve. Like other similar suits filed in other federal courts, this action seeks judicial intervention in a political morass."
 {¶ 26} Even assuming we can construe the amount of the medical charges as an anticipatory repudiation, appellant would have to show that but for the repudiation she would have been "ready, willing, and able to perform [her] obligations under the contract." 13 Williston on Contracts (4th Ed. 2000) 692, Section 39:41. This is not the case. Appellant has neither suggested what amount she considers "reasonable" nor has she proffered any such amount.
 {¶ 27} In line with appellant's failure to tender any amounts owed, we find that appellant has not demonstrated damages. Appellant received the value of the medical services and has tendered nothing.
 Breach of Duty of Good Faith and Fair Dealing {¶ 28} Appellant acknowledges that "[i]n essence, a claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing." Krukrubo v. Fifth Third Bank, 10th Dist. No. 07AP-270, 2007-Ohio-7007, ¶ 19. See Wauseon Plaza, L.P. v. WauseonHardware Co., 156 Ohio App.3d 575, 2004-Ohio-1661. Appellant then contends that her breach of good faith and fair dealing claim is valid based upon her breach of contract claim. Based on our determination that appellant failed to plead a prima facie breach of contract claim, we find that appellant's claim for breach of the duty of good faith and fair dealing must also fail. *Page 10 
 Unjust Enrichment {¶ 29} "A claim for unjust enrichment arises out of a contract implied in law, or quasi-contract." Hummel v. Hummel (1938), 133 Ohio St. 520,525-528. Such a contract is not a true contract, but is an "`obligation that is created by the law without regard to expressions of assent by either words or acts,' * * *." (Citations omitted.) Legros v. Tarr
(1989), 44 Ohio St.3d 1, 7-8. Under this type of contract, civil liability "arises out of the obligation cast by law upon a person in receipt of benefits which he [or she] is not justly entitled to retain" without compensating the individual who conferred the benefits.Hummel, 133 Ohio St. at 525.
 {¶ 30} To recover on a claim of unjust enrichment, the party asserting the claim must demonstrate that "`(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment * * *.'" Hambleton v. R.G.Barry Corp. (1984), 12 Ohio St.3d 179, 183, quoting Hummel at 525. The conferral of the benefit must be the product of fraud, misrepresentation or bad faith by the party accepting and retaining the benefit.National City Bank v. Fleming (1981), 2 Ohio App.3d 50, 58. In other words, there must be a causal connection between the plaintiffs loss and the defendant's benefit. Laurent v. Flood Data Serv., Inc. (2001),146 Ohio App.3d 392, 399.
 {¶ 31} In the present case, appellant acknowledges that she has asserted claims for both breach of an express contract and breach of an implied contract, or unjust *Page 11 
enrichment. We agree with appellant that the unjust enrichment claim was permissible as an alternative claim.
 {¶ 32} In her counterclaim, appellant alleged: "To the extent that Class members and Defendant have already paid for the medical care rendered or the medical services provided at a rate greater than is usual, customary, and reasonable, Plaintiff has been unjustly enriched at the expense of Defendant and the Class members." Appellant now contends that appellee "was and continues to be enriched by virtue of the inflated debt which encumber Jeavons and other similarly situated individuals the debt, whether paid in the past or in the future, has value to Firelands in the form of an account receivable."
 {¶ 33} Appellee argues that the claim is too speculative. We agree. Appellant has not paid any debt it owed to appellee for the medical services. Further, there has been no class certified that has paid any debt. The fact that appellee has an account receivable regarding the services it provided to appellant cannot form the basis of her claim. Whether appellee will recover the amounts owed at some point in the future is not sufficient to sustain an unjust enrichment claim.
 Ohio Consumer Sales Practices Act {¶ 34} Appellant next argues that she properly pled that appellee violated the OCSPA by engaging in unfair or deceptive acts (R.C. 1345.02) and/or unconscionable acts or practices (R.C. 1345.03.) At the outset we note that although the OCSPA exempts transactions with physicians, it has been interpreted to apply to transactions between a service provider such as a hospital and a patient. See Summa Health Sys.v. Viningre *Page 12 
(2000), 140 Ohio App.3d 780. Moreover, the OCSPA was enacted to protect consumers against unfair, deceptive, or unconscionable acts and should be broadly construed. Whitaker v. M.T. Automotive, Inc.,111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 11, ¶ 13.
 {¶ 35} R.C. 1345.02(A) provides that "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section when it occurs before, during or after the transaction." Proof of intent to deceive is not required to establish a violation of R.C. 1345.02. It is sufficient that the conduct complained of "has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts." Funk v. MontgomeryAMC/Jeep/Renault (1990), 66 Ohio App.3d 815, 823. "Whether deception was present is determined by the consumer's state of mind, rather than the intent of the supplier." Drenning v. Blue Ribbon Homes, 6th Dist. No. F-06-001, 2007-Ohio-1323, ¶ 83, citing Thompson v. Jim Dixon LincolnMercury, Inc. (Apr. 27, 1983), 12th Dist. No. 82-11-0109.
 {¶ 36} R.C. 1345.03 provides:
 {¶ 37} "(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
 {¶ 38} "(B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:
 {¶ 39} "* * *; *Page 13 
 {¶ 40} "(2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers; * * *."
 {¶ 41} Unlike R.C. 1345.02, in order to establish that a supplier committed an unconscionable act under R.C. 1345.03, the consumer must demonstrate intent, that is, that the supplier acted knowingly.Karst v. Goldberg (1993), 88 Ohio App.3d 413, 417. "Knowledge," under R.C. 1345.01(E), is defined as "actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness."
 {¶ 42} In the present case, upon review we conclude that appellant failed to offer any facts that appellee engaged in a deceptive act, knowingly or otherwise. The fact that appellant believed that the price charged for the medical services was unfair does not demonstrate an unfair or deceptive act under the OCSPA. Appellant failed to allege that had she known of the fact that certain insured patients received discounted rates she would have sought care elsewhere or whether she relied on appellee's alleged deceptive acts. See Rusk Industries v.Alexander, 6th Dist. No. L-01-1328, 2002-Ohio-2171 (despite the seller's deceptive act, no violation of the OCSPA occurred where the defects had no bearing on the buyer's decision to rescind the contract.) As to unconscionability, R.C. 1345.03 prohibits charging an excessive price in relation to "similar" transactions by *Page 14 
"like" customers. Appellant cannot show that an uninsured customer is like an insured customer.[3]
 {¶ 43} Based on the foregoing, we find that the trial court did not err when it dismissed appellant's counterclaim pursuant to Civ. R. 12(B)(6). We further find that, based on our disposition of appellant's counterclaim, appellant's request for declaratory judgment and injunctive relief lacks merit. Appellant's first assignment of error is not well-taken.
 {¶ 44} In appellant's second assignment of error she asserts that the trial court's denial of her Civ. R. 36 request to deem appellee's unanswered requests for admissions as admitted was an abuse of discretion. An abuse of discretion connotes a judgment that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 45} Civ. R. 36 provides, in relevant part: *Page 15 
 {¶ 46} "The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney."
 {¶ 47} In the present case, on April 7, 2005, appellant served appellee with requests for admissions. Appellee then filed a motion for an extension of time to respond to interrogatories and request for production of documents. On May 17, 2005, the court granted the extension of time until June 16, 2005.
 {¶ 48} On May 23, 2005, appellant filed a motion for an order pursuant to Civ. R. 36(A), to deem her requests as admitted due to the expiration of the 28-day period. On May 26, 2005, appellee filed an amended motion for an extension of time to respond to appellant's discovery requests. Appellee stated that in its prior request for an extension it inadvertently omitted the requests for admissions. On May 27, 2005, the trial court granted appellee's motion. Appellee filed a motion for reconsideration which was denied. Following a second request for an extension, appellee filed its responses to the requests for admissions on July 18, 2005.[4]
 {¶ 49} Upon review, we cannot say that the trial court abused its discretion when it denied appellant's motion for an order pursuant to Civ. R. 36(A). The trial court simply *Page 16 
accepted appellee's reason for its failure to file the responses and granted an extension of time to respond. Appellant's second assignment of error is not well-taken.
 {¶ 50} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
[1] As correctly noted by appellee, during the pendency of the action no class had been certified.
[2] We note that the October 17, 2007 opinion and judgment entry was not journalized until December 10, 2007. Pursuant to App. R. 4(C), this court deemed appellant's notice of appeal as being filed on the December 10, 2007 journalization date.
[3] Finding that the uninsured patient failed to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, the court in Galvan v. Northwestern Mem. Hosp. (Ill.App. 2008),888 N.E.2d 529, 538-539, noted:
"Underlying the plaintiff's claim that charging uninsured patients a higher price amounts to oppressive pricing is a suggestion that the insured and uninsured patients are similarly situated. They are not. The plaintiff ignores the obvious difference between an insured patient and one uninsured. An insured patient by definition has medical insurance either paid by him directly or by his employer as a benefit. In return for the insurance premiums his insurance company contracts with a hospital for medical services at a reduced rate. The contract benefits the hospital because payment is guaranteed. There is no such guarantee from uninsured patients. The reality is an insured patient comes into the hospital with expenses already incurred for medical coverage. That his insurance company has been able to negotiate a reduced rate for medical services from the hospital is simply a product of doing business."
[4] Appellant, apparently unaware that the responses had been filed, filed an additional motion for a Civ. R. 36(A) order on January 10, 2006. Appellant subsequently withdrew the motion. *Page 1