OPINION
{¶ 1} Plaintiff-appellant, Augustine B. Krukrubo ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, in which that court granted the Civ.R. 12(B)(6) motion to dismiss filed by defendants-appellees, Fifth Third Bank, and Fifth Third Bank (Central Ohio) ("appellees"). *Page 2 
 {¶ 2} Appellant alleged the following facts in his complaint, which he filed on July 11, 2006. In July 2004, appellant purchased a piece of real property located in Columbus, Ohio, for the purchase price of $530,000. He financed the purchase with a first mortgage loan and a second mortgage loan, plus a down payment. The second mortgage loan agreement provided that the full amount owing would be due in a lump-sum on July 16, 2005. The building housed a church for which appellant is the pastor.
 {¶ 3} On May 22, 2005, appellant met with appellees' agent, C. Allen McConnell, Jr. ("McConnell"), a bank vice-president, regarding refinancing both mortgage loans. At that meeting, appellant explained to McConnell that he needed to be able to pay off the second mortgage by July 16, 2005. Appellant also explained that he wished for the refinancing to include an additional amount of cash, which appellant planned to use to open a day-care center at the church. At the conclusion of the meeting, McConnell expressed a strong interest in providing the desired financing, and indicated he was optimistic about completing the loan swiftly.
 {¶ 4} On or about June 29, 2005, after appellant completed a loan application, McConnell faxed appellant a "Term Sheet," which set forth the basic terms of a financing package. The next day, appellant again met with McConnell in order to discuss the final terms. Later, upon request, appellant provided copies of all leases affecting the subject property. In early July, appellant began receiving telephone calls from the second mortgage holder about the payoff of that loan. On July 21, 2005, McConnell sent appellant a five-page contract titled "Commitment Letter," which contained the specific terms of the financing agreement between the parties. Both McConnell and appellant signed the Commitment Letter. *Page 3 
 {¶ 5} Appellant sent a copy of the Commitment Letter to the second mortgage holder, to show that he was moving toward paying off the second mortgage loan. Thereafter, appellant and the second mortgage holder agreed that, until the refinancing was finalized, appellant would continue making payments and the second mortgage holder would accept these payments, calculated with a default rate of interest.
 {¶ 6} Later, appellees ordered an appraisal for the subject property, and appellant requested a closing date. Then, appellant alleged, "From August 2005 through October 2005, [appellees] intentionally, deliberately, recklessly, negligently, falsely, and maliciously represented to [appellant] numerous dates upon which the Refinance would be funded and closed." (Complaint, ¶ 29.) Appellant alleged that each time appellees gave him a new closing date, he would pass on this information to the second mortgage holder in an effort to reassure that entity that he intended to pay off the second mortgage loan. Appellant alleged that each time he or his attorney would express concern about the delay, McConnell would reassure him or his attorney that the loan was being processed and would be closed shortly.
 {¶ 7} Finally, on October 3, 2005, appellant went personally to McConnell's office, but McConnell refused to speak or meet with appellant. Later that day, McConnell telephoned appellant's counsel to inform him that there was a problem with appellant's credit. McConnell indicated that because of "open accounts" on appellant's credit report, appellees might elect not to close the loans. According to the complaint, the accusations about "open accounts" were meritless, and appellant informed McConnell so in a letter dated October 4, 2005. Upon receipt of appellant's letter, McConnell told appellant that *Page 4 
his loan application had not been denied and was still being processed in preparation for a closing.
 {¶ 8} Throughout the remaining months of 2005, McConnell requested additional personal financial information from appellant, and continued to indicate that the loan process was moving forward. On or about January 3, 2005, appellant learned that McConnell no longer worked for appellees. In response to further inquiries about the status of his loan application, appellees wrote to appellant on March 3, 2006, and informed him that McConnell had no authority to issue the Commitment Letter and that appellees did not intend to close the loan.
 {¶ 9} Appellant alleged that McConnell's statements that the loan was being processed and a closing contemplated were false, and that appellant relied on them to his detriment. He alleged that the second mortgage holder foreclosed on the subject property, obtaining a cognovit judgment against appellant. He alleged that this led to garnishments and forcible entry and detainer actions against appellant's church and other tenants. He alleged that his credit rating was damaged and he suffered severe emotional distress, lost rental revenue, and loss of the increase in value of the subject property.
 {¶ 10} On September 29, 2006, appellees filed a motion to dismiss appellant's complaint for failure to state a claim, pursuant to Civ.R. 12(B)(6). After the motion was fully briefed by the parties, the trial court issued a March 6, 2007 decision and entry granting the motion in its entirety. Appellant timely appealed and advances the following ten assignments of error for our review:
 1. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT. *Page 5 
 2. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT FAILED TO STATE A CLAIM FOR BAD FAITH.
 3. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT FAILED TO A STATE CLAIMS FOR NEGLIGENCE AND NEGLIGENT MISREPRESENTATION.
 4. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT FAILED TO STATE A CLAIM FOR WILLFUL MISCONDUCT.
 5. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT FAILED TO STATE CLAIMS FOR FRAUD AND FRAUDULENT MISREPRESENTATION.
 6. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT FAILED TO STATE A CLAIM FOR INTENTIONALL [sic] INFLICTION OF EMOTIONAL DISTRESS.
 7. THE TRIAL COURT ERRED IN FAILING TO ACCEPT ALL FACTUAL ALLEGATIONS SET FORTH IN THE COMPLAINT AS TRUE.
 8. THE TRIAL COURT ERRED IN FAILING TO MAKE ALL REASONABLE INFERENCES IN FAVOR OF THE APPLELLANT [sic].
 9. IN GRANTING THE MOTION TO DISMISS, THE TRIAL COURT ERRED IN FAILING TO STATE OR ANNOUNCE THAT THE COMPLAINT AND WRITTEN INSTRUMENTS ATTACHED THERETO SHOW, ON THEIR FACE, AN INSUPERABLE BAR TO RELIEF AS A MATTER OF LAW.
 10. THE TRIAL COURT ERRED IN INTERPRETING THE CONTRACT, AND OTHERWISE CONSIDERING EVIDENCE OUTSIDE OF THE COMPLAINT IN RULING ON THE 12(B)(6) MOTION TO DISMISS.
 {¶ 11} An order granting a Civ.R. 12(B)(6) motion is subject to de novo review. Perrysburg Twp. v. Rossford, 103 Ohio St.3d 79,2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. Because we perform a de novo analysis of the merits of appellees' motion, appellant's *Page 6 
seventh, eighth, ninth, and tenth assignments of error are moot because they all assign error in the manner in which the trial court evaluated the merits of the motion. As such, we will substantively address only appellant's first through sixth assignments of error.[1]
 {¶ 12} Civ.R. 12(B)(6) authorizes a defendant to assert by motion that the plaintiff's complaint fails to state a claim upon which relief may be granted. Such a motion tests the sufficiency of the complaint.State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs. (1992),65 Ohio St.3d 545, 548, 605 N.E.2d 378. Therefore, a court must limit its consideration to the four corners of the complaint when deciding a Civ.R. 12(B)(6) motion to dismiss. Singleton v. Adjutant Gen. ofOhio, Franklin App. No. 02AP-971, 2003-Ohio-1838, ¶ 18. In addition, a court must presume that all factual allegations in the complaint are true and all reasonable inferences must be drawn in favor of the nonmoving party. Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190,192, 532 N.E.2d 753. However, "unsupported conclusions of a complaint are not considered admitted and are not sufficient to withstand a motion to dismiss." Phelps v. Office of Attorney Gen., Franklin App. No. 06AP-751, 2007-Ohio-14, ¶ 4, quoting State ex rel. Seikbert v.Wilkinson (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128.
 {¶ 13} In support of his first assignment of error, appellant maintains that his complaint states a claim for breach of contract. The elements of a claim for breach of contract are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. Jarupan v. Hanna, Franklin App. No. 06AP-1069, 2007-Ohio-5081, ¶ 18. Appellant alleged the existence of a contract. The *Page 7 
alleged contract is the Commitment Letter. See Toledo O.J., Inc. v.Fifth Third Bank (Aug. 24, 2001), Lucas App. No. L-01-1039, 2001 Ohio App. LEXIS 3748, at *8. Appellant incorporated the alleged contract into the complaint pursuant to Civ.R. 10(C). He also sufficiently alleged appellees' breach and resulting damages.
 {¶ 14} However, nowhere in the complaint did appellant allege that he performed all of his obligations under the contract. The complaint contains allegations that appellant complied with at least some of his obligations, such as providing financial statements and other information upon appellees' request, but the plaintiff's full
performance, not part performance, is the required element.
 {¶ 15} By its terms, the Commitment Letter was subject to "the terms, conditions and limitations set forth [therein]."[2] These terms, conditions, and limitations included, inter alia, appellant's obligation to provide to appellees financial statements, tax returns, and "any other information required by the Bank" that would be "satisfactory to Bank";[3] and provide "such documents and information as Lender or its counsel may require * * *"[4] In addition, the contract provided that appellees could terminate the commitment for appellant's failure to satisfy any of the conditions thereof, and could terminate the commitment without notice if, inter alia:
 (a) Any of the items required to be delivered by Borrowers to Lender are not delivered within the time and in the form and manner required by this Commitment or there is any default under any of the terms or provisions of this Commitment;
 (b) Any representations made by or on behalf of the Borrowers or any of the Guarantors, whether in this *Page 8 
Commitment or otherwise, prove untrue or misleading in any material respect;
 * * *
 (e) There is any material adverse change in the condition (financial or otherwise), business, profits or prospects of Borrowers * * *[5]
 {¶ 16} Pursuant to Civ.R. 9(C), where a cause of action is contingent upon the satisfaction of some condition precedent, the plaintiff must plead, generally, that the condition has been satisfied. Lewis v.Wal-mart, Inc. (Aug. 12, 1993), Franklin App. No. 93AP-121. It is apparent from the face of the Commitment Letter that appellees' duties were contingent upon the satisfaction of numerous conditions precedent. "Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused." 9 Restatement of the Law 2d, Contracts (1981), Section 225(1).
 {¶ 17} Appellant failed to allege that he had performed all of his obligations under the contract, or that his nonperformance was somehow excused. Thus, even taking all of the allegations in the complaint as true, and making all reasonable inferences in appellant's favor, as we are bound to do, we conclude that appellant's complaint does not state a claim for breach of contract. Accordingly, the first assignment of error is overruled.
 {¶ 18} In support of his second assignment of error, appellant argues that his claim for "bad faith" should not have been dismissed. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." 9 Restatement of the Law 2d, Contracts (1981), Section 205; DVCC, Inc. v. Med. College of *Page 9 Ohio, Franklin App. No. 05AP-237, 2006-Ohio-945, ¶ 20. "The source of a lender's duty of good faith and fair dealing is found in the Uniform Commercial Code ["UCC"] * * * and the Restatement * * *." Needham v.Provident Bank (1996), 110 Ohio App.3d 817, 831, 675 N.E.2d 514. UCC 1-203, codified in R.C. 1301.09, provides, "[e]very contract or duty within * * * [the UCC] imposes an obligation of good faith in its performance or enforcement." UCC 1-201, codified in R.C. 1301.01, defines "good faith" as "honesty in fact in the conduct or transaction concerned." R.C. 1301.01(S).
 {¶ 19} The duty of good faith and fair dealing being integral to any contract, the breach of that duty, when alleged,[6] is thus integral to the plaintiff's cause of action for breach of contract. Accordingly, "an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim * * *." Interstate Gas Supply, Inc. v. Calex Corp., Franklin App. No. 04AP-980, 2006-Ohio-638, ¶ 98. Accord Wauseon Plaza L.P. v. WauseonHardware Co., 156 Ohio App.3d 575, 2004-Ohio-1661, 807 N.E.2d 953, ¶ 52. In essence, a claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing. Because appellant's complaint fails to state a claim for breach of contract, it also fails to state a claim for breach of the duty of good faith and fair dealing. For these reasons, the second assignment of error is overruled.
 {¶ 20} In support of his third assignment of error, appellant argues that the trial court erred in dismissing his cause of action for negligent misrepresentation. The *Page 10 
elements of a cause of action for negligent misrepresentation are as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis omitted.) Delman v. Cleveland Heights
(1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835.
 {¶ 21} "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Ohio Bur. of Workers' Comp. v.MDL Active Duration Fund, LTD. (S.D.Ohio2007), 476 F.Supp.2d 809, 816, citing Weiner v. Klais Co., Inc. (C.A.6, 1997), 108 F.3d 86, 88. Appellant's complaint contains sufficient direct or inferential allegations respecting all elements of his negligent misrepresentation claim such that the dismissal of this claim was unwarranted. Therefore, appellant's third assignment of error is sustained.
 {¶ 22} In support of his fourth assignment of error, appellant argues that the trial court erred in dismissing his claim for "willful misconduct." The term "willful misconduct" is a tort-related term of art. See, e.g., Black's Law Dictionary (8th Ed.2004), 1020. However, `"[t]ort law is not designed * * * to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation * * * remains the particular province of the law of contracts.'" Corporex Dev. Constr. Mgmt., Inc.v. Shook, Inc., 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, quoting Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp.Assn. (1990), 54 Ohio St.3d 1, 7, 560 N.E.2d 206. *Page 11 
 {¶ 23} Though appellant stated a claim for negligence, discussed supra, negligence, too, is incompatible with an allegation of a "willful" act. "Willful conduct has been defined by the Supreme Court of Ohio as the intent, purpose, or design to injure." Byrd v. Kirby, Franklin App. No. 04AP-451, 2005-Ohio-1261, ¶ 22, discretionary appeal not allowed, 106 Ohio St.3d 1506, 2005-Ohio-4605, 833 N.E.2d 1248, citing Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 319, 662 N.E.2d 287. "[W]illful necessarily contemplates more than mere negligence or failure to conform to standards of practice, but instead anticipates an intentional, wrongful act."White v. Ford Motor Co. (2001), 142 Ohio App.3d 384, 388,755 N.E.2d 954. Accordingly, the trial court correctly concluded that, insofar as it purports to state a claim for "willful misconduct," appellant's complaint fails to state a claim upon which relief may be granted. For this reason, appellant's fourth assignment of error is overruled.
 {¶ 24} In support of his fifth assignment of error, appellant maintains that the trial court erred in dismissing his claim for fraud. An action for fraud consists of six elements: "a representation of a fact, which is material, made falsely — either with knowledge of its falsity or utter disregard and recklessness as to falsity — with an intent to mislead, with justifiable reliance thereupon, and a resulting injury." Tokles Son, Inc. v. Midwestern Indem. Co. (1992),65 Ohio St.3d 621, 632, 605 N.E.2d 936.
 {¶ 25} The element of false representation of a material fact may only be based upon past or existing facts, not promises or representations relating to future actions or conduct, which are considered predictions, not fraudulent misrepresentations. Hoyt v. Nationwide Mut. Ins.Co., Franklin App. No. 04AP-941, 2005-Ohio-6367, ¶ 36. However, when a promise of future action is made with a present intention not toperform, this is an *Page 12 
intentional misrepresentation of an existing fact, and will support a cause of action for fraud. Id. Appellant's complaint alleges that, when McConnell made representations that the refinancing would take place on certain dates, he knew that these dates could not be kept. See, e.g., Complaint, ¶ 54. This allegation will support a cause of action for fraud and, along with appellant's well-pleaded allegations going to the remaining elements of fraud, precludes dismissal of the fraud claim. Accordingly, appellant's fifth assignment of error is sustained.
 {¶ 26} In support of his sixth assignment of error, appellant argues that the trial court erroneously dismissed his claim for intentional infliction of emotional distress. For a claim of intentional infliction of emotional distress to survive a motion to dismiss, "a plaintiff must allege that * * * [the] defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiffs serious emotional distress * * *." Miller v. Currie (C.A.6, 1995), 50 F.3d 373, 377; see, also, Oglesby v. Columbus, Franklin App. No. 01AP-1289, 2002-Ohio-3784, ¶ 10. This means "the actor desires to inflict severe emotional distress, * * * [or] he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, * * * in deliberate disregard of a high degree of probability that the emotional distress will follow." Restatement of the Law 2d, Torts (1965), Section 46, Comment i.
 {¶ 27} While appellant did allege that appellees' actions were taken "willfully and recklessly"[7] and that they in fact caused appellant severe emotional distress, he did not allege that appelleesintended to cause, or knew or should have known that its actions would cause appellant to suffer extreme emotional distress. In other words, appellant did *Page 13 
not allege either that appellant's severe emotional distress was the object and goal of appellees' actions, or that appellees disregarded a substantial risk that its actions would cause appellant severe emotional distress.
 {¶ 28} Because appellant failed to allege that appellees intended to cause, or knew or should have known that they would cause appellant severe emotional distress, his complaint failed to state a claim for intentional infliction of emotional distress. See Murphy v. BrooklynAcres Mut. Homes, Inc. (May 30, 1996), Cuyahoga App. No. 68593, discretionary appeal not allowed (1996), 77 Ohio St.3d 1472,673 N.E.2d 137. For this reason, appellant's sixth assignment of error is overruled.
 {¶ 29} In summary, appellant's first, second, fourth, and sixth assignments of error are overruled on their merits, his seventh, eighth, ninth, and tenth assignments of error are overruled as moot, and his third and fifth assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings.
Judgment affirmed in part and reversed in part; cause remanded.
McGRATH, J., concurs.
TYACK, J., concurs in part and dissents in part.
[1] Alternatively, appellant failed to separately argue these assignments of error, and thus we may properly disregard them. App.R. 16(A); Lias v. Beekman, Franklin App. No. 06AP-1134, 2007-Ohio-5737, ¶ 4.
[2] Commitment Letter, 1.
[3] Id. at 2.
[4] Id. at 3.
[5] Id. at 4.
[6] Breach of the duty of good faith and fair dealing is not alleged in every complaint for breach of contract because, in reality, contracts are sometimes breached simply because breach is a sound business decision on the part of the defendant. Thus, a party's deliberate and willful breach of a contract does not necessarily equate to bad faith.Clem v. Steiner, Portage App. No. 2002-P-0056, 2003-Ohio-4865, ¶ 36 (Christley, J., concurring in part and dissenting in part).
[7] Complaint, ¶ 73.