[Cite as *State ex rel. Lillis v. Summit*, 2017-Ohio-1539.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO ex rel.
MONICA LILLIS, et al.

      Appellants

      v.

COUNTY OF SUMMIT, et al.

      Appellees

C.A. No.     28307


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2013-07-3400

DECISION AND JOURNAL ENTRY

Dated: April 26, 2017

CALLAHAN, Judge.

{¶1}    Monica Lillis, David Horvath, and James Horvath appeal a decision of the Summit County Court of Common Pleas dismissing their petition for a writ of mandamus against the City of Akron for lack of standing.  This Court reverses.

I.

{¶2}    Because this matter comes before this Court following the grant of a motion to dismiss, this Court relates the facts as alleged in the amended complaint.[1]

{¶3}    Ms. Lillis and Messrs. Horvath ("the Owners") own real property at 2139 Glenmount Avenue in Coventry Township.  This property was improved with two apartment buildings. In July 2011, Brewster Creek overflowed and its southern tributary flooded one of the

---

[1] The initial complaint was amended before the motion to dismiss.

apartment buildings. A portion of the building's foundation and its first floor collapsed. Ultimately, the Owners had that building demolished.

{¶4} In 2013, the Owners filed suit against the Ohio Department of Transportation, the County of Summit, the City of Akron ("Akron"), Coventry Crossing Community Association, and Coventry Crossing P.U.D. Owners' Association. They alleged that the defendants and respondents "own and/or otherwise bear responsibility for maintaining storm water management systems and structures that have an impact upon the amount of water that drains into the Brewster Creek," that construction has increased the storm water burdens on the "Brewster Creek system," and that the defendants and respondents had not maintained the storm water management systems so as to minimize flooding. They contended that the result was "repeated and worsening flooding" on their property and particularly described the July 2011 flooding. They further alleged that "the public agency [r]espondents have acted in such a way as to constitute a taking of [the Owners'] property." With respect to Akron, the Owners also alleged "Akron is a home-rule city * * * and possesses the power to appropriate land through eminent domain under R.C. Chap[ter] 719 and R.C. 163.01 et seq." They sought damages for a private nuisance and a writ of mandamus to compel eminent domain proceedings.

{¶5} As the case proceeded, all of the defendants except Akron were dismissed. In addition, the private nuisance count against Akron was dismissed. Consequently, by the time of trial, all that remained was a petition for a writ of mandamus to compel Akron to institute eminent domain proceedings concerning the subject property.

{¶6} On the day of the trial, Akron orally moved to dismiss the amended complaint for lack of standing. The trial court proceeded with the trial, after which the parties briefed the standing issue. Akron argued that the Owners' claim was not redressable because it "has no

authority (under either the Ohio Constitution or the Revised Code) to initiate appropriation proceedings in response to [the Owners'] complaint in mandamus alleging a taking-by-flooding claim, given that it is undisputed that [the Owners'] property is located outside the City's municipal limits."

{¶7} The trial court dismissed the action for lack of standing. The court reasoned, "Ohio law is clear that property owners do not have standing to bring a mandamus action to compel a municipality to appropriate property outside the municipality's jurisdiction" and "none of the enumerated purposes listed in R.C. 719.01 include appropriating property for an alleged taking." Noting that the Owners' property is located outside of Akron in Coventry Township, the court concluded that the Owners "have no redressable claim against the City of Akron and are without standing."

{¶8} The Owners appeal raising one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE [OWNERS] HAVE STANDING UNDER THE U.S. CONSTITUTION AND THE LAWS AND CONSTITUTION OF THE STATE OF OHIO TO BRING A MANDAMUS ACTION IN INVERSE CONDEMNATION AGAINST THE CITY OF AKRON FOR A PHYSICAL TAKING OF THE [OWNERS'] PROPERTY IN COVENTRY TOWNSHIP, AND THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DECIDED THEY LACKED STANDING.

{¶9} In their sole assignment of error, the Owners argue that the trial court erred in finding they lacked a redressable claim and, therefore, lacked standing. This Court agrees.

{¶10} The trial court construed Akron's motion to dismiss for lack of standing as a motion to dismiss under Civ.R. 12(B)(6). Akron did not move to dismiss until after it filed its answer to the amended complaint. Consequently, its motion was, in effect, a motion for

judgment on the pleadings under Civ.R. 12(C). *See Savoy v. Kramer*, 9th Dist. Summit No. 27418, 2015-Ohio-437, ¶ 5. This Court reviews the granting of a motion under either subsection de novo. *Id.*

{¶11} "A motion for judgment on the pleadings is akin to a delayed motion to dismiss for failure to state a claim." *Cashland Fin. Servs., Inc. v. Hoyt*, 9th Dist. Lorain No. 12CA010232, 2013-Ohio-3663, ¶ 7. The standard applied by a trial court in resolving motions under Civ.R. 12(B)(6) and Civ.R. 12(C) is similar. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569-570 (1996). "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond a doubt, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 570.

{¶12} Standing is a preliminary issue that is decided before a court considers the merits of a claim. *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 9. It is an issue of law that is reviewed de novo on appeal. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 20. Standing requires (1) an injury; (2) that is fairly traceable to the defendant; and (3) that the relief sought in the complaint is likely to redress. *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

{¶13} Akron's motion to dismiss focused on the issue of redressability and the trial court's decision was based on that issue. Consequently, this Court reviews the narrow issue of whether the Owners' alleged injury was likely to be redressed by the relief sought in their complaint. This Court does not address whether the Owners met the other requirements for standing or the merits of the Owners' claim.

{¶14} "'Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.'" *State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, ¶ 14, quoting *State ex rel. Shemo v. Mayfield Hts*., 95 Ohio St.3d 59, 63 (2002). Inverse condemnation is "'a cause of action against the government to recover the value of property taken by the government without formal exercise of the power of eminent domain.'" *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 62, quoting *Moden v. United States*, 404 F.3d 1335, 1342 (Fed.Cir.2005). "Two main theories exist for establishing a taking, one based on land-use or zoning regulations and the other, on physical invasions by the government." *State ex rel. River City Capital v. Clermont Cty. Bd. of Commrs*., 12th Dist. Clermont No. CA2010-07-051, 2011-Ohio-4039, ¶ 25. While regulatory takings generally impact an owner's use of his or her land, physical takings involve a direct encroachment on the land. *See id*.

{¶15} To be entitled to a writ of mandamus for inverse condemnation, an owner "must establish a clear legal right to compel the city to commence appropriation, a corresponding legal duty on the part of the city to institute that action, and the lack of an adequate remedy * * * in the ordinary course of law." *Gilbert* at ¶ 15. The parties and the trial court focused on whether Akron had the authority to appropriate the Owners' property. Both the Owners' right to compel appropriation and Akron's duty to institute an action depend on the existence of this authority. Whether a municipality has the authority to appropriate property for a particular purpose and whether a property owner has a redressable claim where such a taking occurs without compensation are in essence opposite sides of the same coin.

{¶16} In determining that the Owners' claim was not redressable, the trial court relied on *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, and *Moore*, 133 Ohio St.3d 55,

2012-Ohio-3897. Both of those cases involved property owners who sought to compel a municipality to institute eminent domain proceedings concerning their property that was located outside of the municipality based on zoning changes within the municipality.

{¶17} The issue in *Clifton* was "whether a property owner has standing to compel a government entity to initiate appropriation proceedings for an alleged regulatory taking when the affected property lies outside the limits of the government entity." *Clifton* at ¶ 1. The *Moore* court noted that it "expressly cautioned in *Clifton* that the decision should not be construed too broadly beyond the facts and posture of that case." *Moore* at ¶ 29, citing *Clifton* at ¶ 30-32. *Clifton* "does not stand for the proposition that a property owner always lacks standing to bring a mandamus claim against a municipality when the affected property is outside the municipality's corporate limits." *Moore* at ¶ 30. "Rather, *Clifton* must be understood in conjunction with the unique facts and circumstances upon which it rests * * * including the fact that it was a mandamus claim *against a foreign municipality* by a property owner who *attempted to challenge the rezoning of contiguous land* from one industrial use to another." (Emphasis added.) *Id.*

{¶18} There were two "unique facts" in *Clifton*. First, the property that was alleged to have been taken was outside of the municipality. *Clifton* at ¶ 32. Second, the alleged taking occurred by a zoning change within the municipality. *Id.* at ¶ 31. The present case is similar in that the Owners' property is outside of Akron. But, it is dissimilar in that the Owners alleged a physical taking based on flooding, not a regulatory taking based on zoning.

{¶19} The trial court noted that municipalities have inherent and statutory power to appropriate property. Addressing a municipality's inherent authority, the trial court quoted portions of *Clifton* and *Moore* indicating a municipality's inherent authority is based on the home-rule amendment to the Ohio Constitution and, as such, is generally restricted to a

municipality's corporate limits. *See Clifton* at ¶ 27, and *Moore* at ¶ 27, both citing *Britt v. Columbus*, 38 Ohio St.2d 1 (1974), paragraph one of the syllabus.

**{¶20}** Addressing a municipality's statutory authority, the trial court noted that R.C. 719.02 provides: "In the appropriation of property for any of the purposes named in section 719.01 of the Revised Code, the municipal corporation may, when reasonably necessary, acquire property outside the limits of the municipal corporation." The court then quoted the purposes listed in R.C. 719.01(A) through (O) and concluded, "[n]one of the enumerated purposes listed in R.C. 719.01 include appropriating property for an alleged taking." The Owners argue that, in doing so, the trial court "misread[]" *Clifton*. Akron, on the other hand, argues that the trial court merely "echoe[d]" the Ohio Supreme Court's language in *Clifton*. Neither of these propositions is entirely correct.

**{¶21}** The trial court recognized that a municipality has statutory authority to appropriate property outside of its boundaries. Before addressing that authority, the court quoted *Clifton*. "The General Assembly has also provided municipalities with statutory authority to use eminent-domain powers to acquire property that lies outside the municipality's corporate limits 'when reasonably necessary,' but only for certain enumerated public purposes." *Clifton* at ¶ 28, quoting R.C. 719.02 and citing R.C. 719.01. Although the court did not fully analyze the purposes enumerated in R.C. 719.01, it did not "misread[]" *Clifton*'s finding that R.C. 719.01 and 719.02 empower a municipality to appropriate property outside of its corporate limits. Rather, it concluded that the statutory purposes did not apply to the present case because it was "an alleged taking."

**{¶22}** Akron argues that, in reaching this conclusion, the trial court "echoe[d]" the *Clifton* court's finding that "none of the enumerated purposes listed in R.C. 719.01 include

appropriating property for *an alleged regulatory taking*." (Emphasis added.) *Clifton* at ¶ 28. In the present case, however, the trial court did not include the word "regulatory." Rather, the trial court found that "none of the enumerated purposes listed in R.C. 719.01 include appropriating property for *an alleged taking*." (Emphasis added.). Under the trial court's language, an inverse condemnation action could never be brought based on one of the purposes listed in R.C. 719.01 when a municipality takes property without the formal exercise of its eminent domain power. Thus, the trial court's broad language does not "echo[]" *Clifton*, which specified "an alleged *regulatory* taking." (Emphasis added.) *Clifton* at ¶ 28.

{¶23} A review of the purposes listed in R.C. 719.01 shows that each one involves a physical, as opposed to a regulatory, taking of property. For example, a municipality may appropriate property for "streets," "public halls," and "sewers." R.C. 719.01(A), (C), and (J). Unlike *Clifton* and *Moore*, the current case does not involve an alleged regulatory taking. Rather, the Owners claimed that Akron physically took their property without formally instituting appropriation proceedings. The Owners cite three sections of R.C. 719.01 in support of their argument that Akron was empowered to appropriate property for the type of taking they experienced, namely R.C. 719.01(I), (J), and (M).

{¶24} Initially, Akron points out that the Owners did not argue below that R.C. 719.01(M) applied. "Arguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. The Owners did not mention R.C. 719.01(M) in their brief to the trial court, nor did they make any argument concerning that provision. Therefore, the Owners' argument concerning R.C. 719.01(M) is not properly before this Court. The Owners, however,

did argue to the trial court that R.C. 719.01(I) and (J) applied. Consequently, this Court will address the applicability of those provisions.

{¶25} R.C. 719.01(I) permits a municipality to appropriate land

[f]or constructing, opening, excavating, improving, or extending any canal or watercourse, located in whole or in part within the limits of the municipal corporation or adjacent and contiguous thereto, and which is not owned in whole or in part by the state, or by a company or individual authorized by law to make such improvement.

The Owners contend that this section empowers Akron to appropriate their property because the "consistent and uncontroverted evidence in this case was * * * that most of the Brewster Creek's course runs through the City of Akron" and "the City [of Akron], not the State, owns the water in Brewster Creek."

{¶26} When deciding a motion for judgment on the pleadings under Civ.R. 12(C), "[t]he trial court must confine its inquiry to the material allegations in the pleadings." *Cashland Fin. Servs., Inc.*, 2013-Ohio-3663, at ¶ 7. The Owners reference to "evidence in this case" goes beyond the facts alleged in the pleadings. The amended complaint does not allege Akron owns the Brewster Creek watercourse or its southern tributary to the exclusion of State. Consequently, the amended complaint does not allege a redressable claim under R.C. 719.01(I).

{¶27} R.C. 719.01(J) provides a municipality may appropriate land "[f]or sewers, drains, ditches, public urinals, bathhouses, water closets, and sewage and garbage disposal plants and farms." In its brief to the trial court, Akron argued that the Owners' claim was not redressable under this provision because the term "sewer" does not include storm water management and collection systems. By contrast, the Owners contended R.C. 719.01(J) is not limited to sanitary sewers.

{¶28} A court's primary concern when analyzing a statute is to ascertain and give effect to the intentions of the General Assembly. *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, ¶ 7. If a statute is unambiguous, it is applied as written "giving effect to all of its language, without adding or deleting any words chosen by the General Assembly." *Id*. "Ambiguity exists if the language is susceptible of more than one reasonable interpretation." *State v. Jordan*, 89 Ohio St.3d 488, 492 (2000). In the current case, the word "sewers" is ambiguous as it can be read either as limited to sanitary sewers or as also including storm water sewers.

{¶29} When words have a technical or legislative definition, they are construed in accordance with that definition. R.C. 1.42. Otherwise, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." *Id.* The term "sewers" is not defined in R.C. Chapter 719, so this Court looks to its common usage. A sewer is "an artificial usu[ally] subterranean conduit to carry off sewage and sometimes surface water (as from rainfall)." *Merriam-Webster's Collegiate Dictionary* 1140 (11th Ed.2004). The definition explicitly includes both "sewage" and "surface water (as from rainfall)." Thus, the common usage of the term "sewers" includes both sanitary and storm water sewers.

{¶30} Moreover, the legislature did not use the term "sewers" in isolation in R.C. 719.01(J). Along with "sewers," the legislature listed "drains, ditches, public urinals, bathhouses, water closets, and sewage and garbage disposal plants and farms." R.C. 719.01(J). Some of these terms, such as "sewage * * * disposal plants," are commonly associated with sanitary sewers. Others, such as "ditches," are commonly associated with storm water management.

{¶31} Indeed, other appellate districts have found that R.C. 719.01(J) authorizes the appropriation of property for storm water management and flood control purposes. For instance,

the First District found statutory authority based on R.C. 719.01(J) to appropriate land for a "storm water sewer." *Boehle v. Colerain Twp.* 1st Dist. Hamilton No. C-840678, 1985 WL 11468, *2 (Sept. 18, 1985). Similarly, the Seventh District found the statute permitted appropriation to construct a "storm water retention system" for flood control purposes. *Boardman Twp. Bd. of Trustees v. Fleming*, 110 Ohio App.3d 539, 544 (7th Dist.1996). The Eighth District, likewise, found a "proposed 'retention basin' comes clearly within the term 'sewers and drains' as authorized under this section [R.C. 719.01(J)]." *Doering v. City of South Euclid*, 112 Ohio App. 177, 183 (8th Dist. June 18, 1960), reconsidered on other grounds 112 Ohio App. 177 (8th Dist. Nov. 3, 1960).

{¶32} This Court concludes that R.C. 719.01(J) is not limited to sanitary sewers. Rather, the terms used in the statute including "sewers, drains, [and] ditches" also encompass various elements of a storm water management system. The Owners contend that Akron took their property for this purpose without instituting formal appropriation proceedings or compensating them for the taking. Assuming the allegations in the complaint are true, as is required when deciding a motion to dismiss, the Owners alleged a redressable claim for inverse condemnation.

{¶33} Finally, the Owners make arguments concerning the United States and Ohio Constitutions and common law riparian rights. Akron contends that these arguments were not raised below and cannot be raised for the first time on appeal. Akron further contends that the Owners' constitutional and common law arguments concern the injury prong, not the redressability prong, for standing. Having already determined that the Owners alleged a redressable claim based on R.C. 719.01(J), this Court finds it unnecessary to address these additional arguments.

{¶34} This Court expresses no opinion on the merits of the Owners' claim, but holds simply that they met the redressability prong for standing to bring their claim. *See Moore*, 133 Ohio St.3d 55, 2012-Ohio-3897, at ¶ 23 ("It is well settled that standing does not depend on the merits of the plaintiff's contention * * *."). Consequently, the Owners' assignment of error is sustained.

III.

{¶35} The Owners' assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JACQUENETTE S. CORGAN, WILLIAM H. CORGAN, and GEORGE J. EMERSHAW, Attorneys at Law, for Appellants.

EVE V. BELFANCE, Director of Law, and SEAN W. VOLLMAN and BRIAN D. BREMER, Assistant Directors of Law, for Appellee.