[Cite as *State ex rel. Maher v. Akron*, 2018-Ohio-4310.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO, ex rel.
PATRICIA MAHER, et al.

      Appellants

      v.

THE CITY OF AKRON, OHIO

      Appellee

C.A. No.     28761

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-04-2039

DECISION AND JOURNAL ENTRY

Dated: October 24, 2018

CALLAHAN, Judge.

**{¶1}** Patricia Maher, Rebecca Johnson, and Eugene and Kimberly Cherry ("Appellants")[1] appeal from a decision of the Summit County Common Pleas Court that granted judgment on the pleadings to the City of Akron ("the City"). This Court affirms.

I.

**{¶2}** In 2016, Ms. Maher and Ms. Johnson filed a complaint against the City listing causes of action for (1) inverse condemnation, (2) breach of contract, and (3) fraud in the inducement. They later filed an amended complaint adding Margaret Graham, Dena Mayhorn, Eugene and Kimberly Cherry, and Richard and Beryl Curling as plaintiffs. Because the trial court granted judgment on the pleadings, this Court accepts the facts contained in the amended complaint as true. *See Pinkerton v. Thompson*, 174 Ohio App.3d 229, 2007-Ohio-6546, ¶ 18 (9th

---

[1] Margaret Graham, Dena Mayhorn, and Richard and Beryl Curling were also plaintiffs below, but have not appealed.

Dist.) (when reviewing a motion for judgment on the pleadings, the factual allegations in the complaint are presumed true).

{¶3}    In 2004, the City had filed the "'Hickory Corridor/Cascade Locks Urban Renewal Area Eligibility Report and Urban Renewal Plan'" ("the Hickory Corridor Plan"). The City also had plans to construct a tunnel for handling sewer overflows during heavy rains and snow melts. Appellants bought their respective properties within the Hickory Corridor Plan area in 2008. In 2013, the City held a neighborhood meeting during which it informed the residents of the Hickory Corridor Plan area about the tunnel project. In 2015, the City passed legislation requesting proposals for construction of the tunnel project. The City established a perimeter zone within the Hickory Corridor Plan area and acquired the properties within that zone that it determined would be impacted by the tunnel project. Appellants' properties were not within that zone.

{¶4}    Construction of the tunnel included the removal of trees and vegetation and the use of bright lights at night. In addition, there was excessive noise and vibrations from the construction activity that rocked Ms. Maher's property.  The Ohio and Erie Canal Towpath was relocated and now runs past Appellants' homes. Appellants claim that the City changed the nature of the Hickory Corridor Plan area, caused their property values to be diminished, and diminished their quiet enjoyment of their properties.

{¶5}    The City answered, filed a counterclaim against Ms. Johnson for breach of contract, and moved for judgment on the pleadings on all of Appellants' claims. The trial court granted the City's motion for judgment on the pleadings. The court certified that there was no just reason to delay an appeal of its order. It further stayed the City's counterclaim against Ms. Johnson pending appeal.

**{¶6}** Appellants raise two assignments of error.

II.

**<u>ASSIGNMENT OF ERROR NO. 1</u>**

THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANTS FAILED TO ALLEGE A VALID REGULATORY TAKINGS CLAIM UNDER THE U.S. AND OHIO CONSTITUTIONS AND THEREBY HOLDING THAT APPELLANTS' CLAIM FOR INVERSE CONDEMNATION FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

**{¶7}** In their first assignment of error, Appellants argue that the trial court erred in granting judgment on the pleadings in regard to their inverse condemnation claim. This Court disagrees.

**{¶8}** "This Court applies a de novo standard of review when reviewing a trial court's ruling on a motion for judgment on the pleadings." *Cashland Fin. Servs., Inc. v. Hoyt*, 9th Dist. Lorain No. 12CA010232, 2013-Ohio-3663, ¶ 7. Such a motion is "akin to a delayed motion to dismiss for failure to state a claim." *Id*. However, a motion for judgment on the pleadings is "'specifically for resolving questions of law.'" *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001), quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond a doubt, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Pontious* at 570. In deciding a motion for judgment on the pleadings, this Court reviews only the "material allegations in the pleadings," *Hoyt* at ¶ 7, and any attachments thereto. *See Padula v. Wagner*, 9th Dist. Summit No. 27509, 2015-Ohio-2374, ¶ 13; Civ.R. 10(C).

{¶9} "'Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.'" *State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, ¶ 14, quoting *State ex rel. Shemo v. Mayfield Hts*., 95 Ohio St.3d 59, 63 (2002). Inverse condemnation is "'a cause of action against the government to recover the value of property taken by the government without formal exercise of the power of eminent domain.'" *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 62, quoting *Moden v. United States*, 404 F.3d 1335, 1342 (Fed.Cir.2005). To be entitled to a writ of mandamus for inverse condemnation, an owner "must establish a clear legal right to compel the city to commence appropriation, a corresponding legal duty on the part of the city to institute that action, and the lack of an adequate remedy * * * in the ordinary course of law." *Gilbert* at ¶ 15.

{¶10} The Ohio Constitution requires a property owner be compensated when "private property shall be taken for public use." Ohio Constitution, Article I, Section 19. "'Two main theories exist for establishing a taking, one based on land-use or zoning regulations and the other, on physical invasions by the government.'" *State ex rel. Lillis v. Cty. of Summit*, 9th Dist. Summit No. 28307, 2017-Ohio-1539, ¶ 14, quoting *State ex rel. River City Capital v. Bd. of Cty. Commrs.*, 12th Dist. Clermont No. CA2010-07-051, 2011-Ohio-4039, ¶ 25. Further, a regulatory taking can be either a total or partial deprivation of the economically beneficial use of the property. *See State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, ¶ 35, 37. Here, Appellants concede that there has not been a physical taking of their property. Instead, Appellants claim that they pled facts asserting a partial regulatory taking.

{¶11} A finding of a partial regulatory taking requires the application of the standard set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978). *State ex rel. Shelly*

*Materials v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, ¶ 18.   Courts perform an "ad hoc, factual inquiry" of

> the following three factors to determine whether a regulatory taking occurred in cases in which there is no physical invasion, and the regulation deprives the property of less than 100 percent of its economically viable use: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action.

*Id*. at ¶ 19, citing *Penn Cent.* at 124. Implicit in a regulatory taking action is the existence of a governmental regulation of private property.  *See Shelly Materials* at ¶ 17; *State ex rel. Duncan v. Village of Middlefield*, 11th Dist. Lake No. 2005-L-140, 2008-Ohio-1891, ¶ 40.

{¶12}  Appellants argue that "[t]he very act of planning, adopting legislation authorizing the construction of the Tunnel Project and proceeding with the construction * * * constitute the regulatory action upon which [they] base their inverse condemnation claims."  The City argues that Appellants failed to allege that the City adopted an ordinance or regulation that sought to regulate how Appellants used their property.

{¶13}  "[R]egulation" is defined as "[t]he act or process of controlling by rule or restriction" or "[a] rule or order, having legal force."  *Black's Law Dictionary* 1311 (8th Ed.1999). Thus, governmental regulation involves actions by a governmental entity taken pursuant to a rule or legislation. "In a proper 'regulatory taking' action, the crux of the landowner's claim is that the municipality's enforcement of a valid law or regulation has harmed the value of his land by restricting the manner in which the land can be used." *Duncan* at ¶ 40. Appellants' amended complaint fails to identify the legislation that the City was enforcing or acting pursuant to when it built the tunnel.  Instead, Appellants merely alleged that the City was "planning" the construction of the tunnel.

{¶14} Appellants' argument that the City "adopt[ed] legislation authorizing the construction of the Tunnel Project" is contrary to the allegations contained in the amended complaint. Instead, Appellants pled that "[o]n March 2, 2015[,] Akron City Council passed legislation permitting a request for proposals to be issued from companies to build the Tunnel Project, a large combined sewer overflow tunnel[.]" This was the only allegation in the amended complaint alluding to a governmental regulation. Based upon Appellants' description of the legislation in the amended complaint, there is no explicit allegation or reasonable inference that this legislation authorized the construction of the tunnel and regulated Appellants' land use in any manner. Accordingly, this material allegation regarding the existence of a governmental regulation of land fails to support a partial regulatory taking in this matter. Further, Appellants did not plead that any other legislation regulated Appellants' land use in any way. Because Appellants have failed to plead a governmental regulation impacting their land use in this case, it is unnecessary to further examine whether Appellants sufficiently pled the *Penn Central* factors for a partial regulatory taking in an inverse condemnation claim.

{¶15} Accepting the material allegations as true and making all reasonable inferences in favor of Appellants, this Court concludes that Appellants could prove no set of facts in support of their inverse condemnation claim based upon a partial regulatory taking that would entitle them to relief. Accordingly, the trial court did not err in granting the City's motion for judgment on the pleadings.

{¶16} The first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN HOLDING THAT APPELLANTS EACH FAILED TO ALLEGE A VALID BREACH OF CONTRACT UNDER OHIO LAW.

{¶17} In their second assignment of error, Appellants argue that the trial court erred in granting judgment on the pleadings in regard to their breach of contract claim. This Court disagrees.

{¶18} As pertinent to our review of this assignment of error, the applicable standard of review for a motion for judgment on the pleadings is set forth under the first assignment of error. "To prove a breach of contract claim[,] a plaintiff must demonstrate by a preponderance of the evidence that: (1) a contract existed, (2) the plaintiff fulfilled [her] obligations, (3) the defendant failed to fulfill its obligations, and (4) damages resulted from this failure." (Quotation marks and citations omitted.) *Hoyt*, 2013-Ohio-3663, at ¶ 8.

{¶19} Inherent in every contract is a duty of good faith and fair dealing by each of the parties in performing and enforcing the contract. *Krukrubo v. Fifth Third Bank*, 10th Dist. Franklin No. 07AP-270, 2007-Ohio-7007, ¶ 18, quoting Restatement of Law 2d, Contracts (1981), Section 205. Allegations of a breach of duty of good faith and fair dealing are subsumed into a breach of contract claim. *Krukrubo* at ¶ 19. Thus, "there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from the breach of the underlying contract." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 44; *Padula*, 2015-Ohio-2374, at ¶ 53.

{¶20} Appellants pled that they each entered into a contract to acquire their respective lots from the City. Appellants also asserted that they relied upon the terms and conditions contained in the recorded Hickory Corridor Plan when deciding to purchase their lots from the City. Appellants alleged that the City knew at the time they entered into their contracts that the tunnel project would be located in the Hickory Corridor, but failed to disclose this information to Appellants resulting in damages. Appellants argued that they pled facts establishing that the City

breached the contracts by 1) "with[olding] material information that induced each Resident to acquire property within the Hickory Corridor Plan[,]" 2) "proceeding with the Tunnel Project[,]" and 3) "not adhering to the Hickory Corridor Plan."

{¶21} Attached to the amended complaint were copies of the real estate sales agreements and the amendment to the real estate sales agreements entered into by Ms. Maher and Ms. Johnson with the City. As for the Cherrys, their real estate sales agreement was not attached to the amended complaint and instead they included an explanation in the amended complaint that the City was in possession of their contract. *See* Civ.R. 10(D)(1). Because the Cherrys complied with Civ.R. 10(D)(1), the absence of their contract with the complaint is not fatal. *See Krause v. Case W. Res. Univ.*, 8th Dist. Cuyahoga No. 70526, 1996 Ohio App. LEXIS 5771, *13 (Dec. 19, 1996). Nonetheless, the Cherrys must still allege facts giving rise to a breach of contract.

{¶22} The only contracts identified by Appellants were their respective real estate sales agreements and amendment to the real estate sales agreements with the City which provided for the sale of vacant parcels by quitclaim deed. Despite identifying these contracts, Appellants failed to identify any specific term in those contracts that was breached by the City.

{¶23} Instead, Appellants' alleged that the City's acts and omissions were contrary to the Hickory Corridor Plan. Yet, Appellants did not allege in their amended complaint that the Hickory Corridor Plan was a separate contract between them and the City. The Appellants only alleged that they relied upon the Hickory Corridor Plan in deciding to purchase their respective lots and that the City acted "contrary to the express terms and conditions upon which the Hickory Corridor [Plan was] enacted." Those allegations, however, do not state a breach of contract claim arising from the real estate sales agreements because of the application of the "Entire

Agreement" clause. This clause stated that "This Agreement is the complete understanding of the parties. Any promise or condition not contained in this Agreement is not binding on the parties." Because the Hickory Corridor Plan was not one of the terms in the real estate sales agreements, that document could not serve as the basis for the breach of contract.

{¶24} Contrary to the allegations in the amended complaint and the real estate sales agreements, Appellants argue on appeal that the terms of the Hickory Corridor Plan were incorporated into their real estate sales agreements by virtue of the City recording it and listing Appellants' properties as being within the Hickory Corridor Plan area. This Court, however, will not consider this argument as it is being raised for the first time on appeal. *JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. Additionally, this argument will not be considered because Appellants failed to cite any legal authority in support of their argument. *See Harris v. Nome*, 9th Dist. Summit No. 21071, 2002-Ohio-6994, ¶ 15; App.R. 12(A)(2); App.R. 16(A)(7).

{¶25} Appellants contend on appeal that their "breach of contract claim arises out of the City's breach of the covenant of good faith and fair dealing that is implied in each contract." (Emphasis deleted.) Contrary to Appellants' position, their breach of contract claim cannot be based solely upon a breach of the duty of good faith and fair dealing. While the duty of good faith and fair dealing is integral to a contract, "there is no violation of th[is] implied duty unless there is a breach of a specific obligation imposed by the contract." *Lucarell*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 43. *See Krukrubo*, 2007-Ohio-7007, ¶ 19. "[A] claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing. [When a plaintiff's] complaint fails to state a claim for breach of contract, it also fails to state a claim for breach of the duty of good faith and fair dealing." *Krukrubo* at ¶ 19. *See Lucarell* at ¶ 47;

*Firelands Regional Med. Ctr. v. Jeavons*, 6th Dist. Erie No. E-07-068, 2008-Ohio-5031, ¶ 28. As addressed above, Appellants have failed to identify any specific term in the real estate sales agreements that the City breached. Accordingly, Appellants' allegations that the City breached its duty of good faith and fair dealing cannot support a breach of contract claim.

{¶26} Lastly, Appellants argue that Ms. Johnson pled an additional breach of contract based upon her allegations that the City conditioned the issuance of a building permit upon her execution of a release of any claims she had against the City. Ms. Johnson, however, did not present this argument to the trial court, and it is therefore forfeited on appeal. *Burden* at ¶ 12.

{¶27} Thus, taking all of the allegations in the amended complaint and the attachments as true, and making all reasonable inferences in Appellants' favor, this Court concludes that Appellants could prove no set of facts that would entitle them to relief on their breach of contract claim. Accordingly, the trial court did not err in granting the City's motion for judgment on the pleadings.

{¶28} The second assignment of error is overruled.

III.

{¶29} The assignments of error are overruled and the judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶30} In accepting all material allegations in the complaint as true and making every reasonable inference in favor of the nonmoving party, I cannot agree that judgment on the pleadings was properly granted. I respectfully dissent.

APPEARANCES:

JOHN F. MYERS, Attorney at Law, for Appellants.

EVE V. BELFANCE, Director of Law, and BRIAN D. BREMER and JOHN CHRISTOPHER REECE, Assistant Directors of Law, for Appellee.

RONALD S. KOPP, STEPHEN W. FUNK and JESSICA A. LOPEZ, Attorneys at Law, for Appellee.