[Cite as *Williams v. Natl. Assn. for the Advancement of Colored People*, 2019-Ohio-1897.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Noel Williams, :

        Plaintiff-Appellant/ :
        Cross-Appellee,              No. 18AP-476

:         (C.P.C. No. 14CV-9504)

v.

:         **(REGULAR CALENDAR)**

National Association for the
Advancement of Colored People et al., :

        Defendants-Appellees/ :
        Cross-Appellants.

:

D E C I S I O N

Rendered on May 16, 2019

**On brief:** *Varner Law Office*, and *Carrie M. Varner*, for plaintiff-appellant/cross-appellee.

**On brief:** *The Gittes Law Group, Frederick M. Gittes,* and *Jeffrey P. Vardaro*, for defendant-appellee/cross-appellant National Association for the Advancement of Colored People. **Argued:** *Frederick M. Gittes.*

**On brief:** *James E. Workman, Jr.*, for defendant-appellee/cross-appellant Sybil Edwards-McNabb.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant/cross-appellee, Noel Williams, appeals from a decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee/cross-appellant, National Association for the Advancement of Colored People ("NAACP"), on Williams' claims of breach of contract, breach of implied contract, breach of implied covenant of good faith and fair dealing,

promissory estoppel, and intentional infliction of emotional distress. The NAACP and defendant-appellee/cross-appellant, Sybil Edwards-McNabb, also filed a cross-appeal from a separate decision and entry of the trial court denying their motion for sanctions. For the following reasons, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} In September 2013, Williams served as president of the Columbus branch of the NAACP. However, on September 13, 2013, the NAACP removed Williams from her position and suspended her membership with the NAACP. Pursuant to the NAACP's bylaws, Williams requested and received a hearing on her suspension of membership and removal from the position of president. Following a February 4, 2014 teleconference, the NAACP issued a February 15, 2014 document upholding its decision and officially suspending Williams' membership for three years. Williams then requested an appeal to the NAACP's board of directors in March 2014, and the appeal hearing panel in May 2014 affirmed the decision to suspend Williams' membership and remove her from the position of president of the Columbus branch.

{¶ 3} Subsequently, on September 12, 2014, Williams filed a complaint in the trial court alleging the NAACP's actions against her were not in accordance with the NAACP's constitution and bylaws. Specifically, Williams asserted claims for breach of contract, breach of implied-in-fact contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and intentional infliction of emotional distress. Williams additionally asserted a claim of defamation individually against Edwards-McNabb, president of the Ohio Conference of NAACP.

{¶ 4} On February 5, 2018, the NAACP and Edwards-McNabb filed separate motions for summary judgment asserting the undisputed facts demonstrated that the NAACP did not commit any actionable breach of contract, defamation, or intentional infliction of emotional distress. Instead, the NAACP asserted that, despite Williams' allegations, it complied with its constitution and bylaws in pursuing disciplinary action against Williams. Williams opposed both motions for summary judgment.

{¶ 5} The parties' Civ.R. 56 materials demonstrated that Williams had been president of the Columbus branch of the NAACP in the early 2000s, serving in that capacity until September 2013. Pursuant to the NAACP's governing constitution, Williams'

membership in the NAACP and her position of president bound her to "abide by the rules and policies of the [NAACP] and the decisions of the Board of Directors." (Constitution of the NAACP, Article IV, Section 1.) In addition to its constitution, the NAACP, a voluntary organization, also has a set of bylaws governing the organization and its members. The NAACP took disciplinary action against Williams after learning that she initiated litigation between the Columbus branch of the NAACP and a third-party contractor without first obtaining proper authorization from the NAACP, in contravention of the NAACP's bylaws.

{¶ 6} Prior to the trial court's ruling on the pending motions for summary judgment, the NAACP and Edwards-McNabb filed a joint motion for sanctions on February 23, 2018 alleging Williams had engaged in a pattern of fraudulent, bad faith, and abusive conduct throughout the litigation. Williams never filed a response to appellees' motion for sanctions.

{¶ 7} On May 15, 2018, the trial court issued two separate decisions and entries granting the motions for summary judgment of the NAACP and Edwards-McNabb. Specifically, the trial court concluded that, as to the NAACP, there were no genuine issues of material fact on Williams' claims of breach of contract, breach of implied-in-fact contract, breach of covenant of good faith and fair dealing, promissory estoppel, and intentional infliction of emotional distress. As to Edwards-McNabb, the trial court concluded there were no genuine issues of material fact on Williams' claim of defamation. The trial court thus entered judgment in favor of appellees on all of Williams' claims. Also on May 15, 2o18, the trial court issued a separate decision and entry denying appellees' motion for sanctions on the grounds that because the court had "issued a final decision in [appellees'] favor[,] * * * the Court finds no reason to consider sanctions." (May 15, 2018 Decision & Entry.)

{¶ 8} Williams' timely appeals from the trial court's decision and entry granting summary judgment in favor of the NAACP. She does not appeal from the decision and entry granting summary judgment in favor of Edwards-McNabb. Additionally, the NAACP and Edwards-McNabb filed a cross-appeal from the trial court's denial of their motion for sanctions.

## II.  Assignments of Error

{¶ 9}  Williams assigns the following errors for our review:

[1.] The trial court committed reversible error in granting appellee NAACP's motion for summary judgment.

[2.] The trial court committed reversible error when it granted appellee NAACP's motion for summary judgment by holding that appellee did not breach any of its implied and actual contractual obligations to appellant.

[3.] The trial court committed reversible error in granting appellee NAACP's motion for summary judgment by holding that there was no issue of material facts as to appellant's claim of breach of contract.

[4.] The trial court committed reversible error in granting appellee NCAAP's motion for summary judgment by holding that there was no issue of material facts as to appellant's claim of breach of the covenant of good faith and fair dealing.

[5.] The trial court committed reversible error in granting appellee NAACP's motion for summary judgment by holding that there was no issue of material facts as to appellant's claim of intentional infliction of emotional distress.

[6.] The trial court committed reversible error in granting appellee NAACP's motion for summary judgment by holding that there was no issue of material facts as to appellant's claim for promissory estoppel.

{¶ 10}  The NAACP and Edwards-McNabb assign the following error for our review:

The trial court erred in deciding not to hold a hearing, or consider the defendants' unopposed motion for sanctions, on the sole basis that the case ended when it granted summary judgment.

## III.  Williams' First, Second, Third, Fourth, Fifth, and Sixth Assignments of Error – Summary Judgment

{¶ 11}  Williams' first, second, third, fourth, fifth, and sixth assignments of error are interrelated, and we address them jointly.  Taken together, Williams asserts in these six assignments of error that the trial court erred in granting the NAACP's motion for summary judgment.

{¶ 12} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 13} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 14} Here, the trial court granted summary judgment to the NAACP on Williams' claims of breach of contract, breach of implied-in-fact contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and intentional infliction of emotional distress. Williams now argues the trial court erred in granting summary judgment on each of these claims because there remain genuine issues of material fact related to each of them.

## A. Breach of Contract

{¶ 15} First, Williams argues the trial court erred in granting the NAACP's motion for summary judgment on her claim for breach of contract. To succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen*

*Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.)  The purpose of contract construction is to realize and give effect to the parties' intent.  *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus.

{¶ 16}  The parties agree that a contract exists between the NAACP and Williams, created by the NAACP's constitution and bylaws.  Williams claims the NAACP breached that contract by suspending her "without first making a finding of satisfactory evidence that the member is guilty of conduct that is not in accord with the principles, aims and purposes of the [NAACP]."  (Compl. at ¶ 36.)  The undisputed evidence showed that on August 14, 2013, Williams filed a document with the Franklin County Municipal Court, Mediation Division, to mediate a dispute between the Columbus branch of the NAACP and third-party contractor Jodi Howell.  Williams concedes she did not obtain approval of the president, CEO, and general counsel for the NAACP prior to filing for mediation.  Pursuant to the NAACP's bylaws:

> No Unit of the Association shall have authority to initiate, endorse or participate in legal action, including, but not limited to, pre-suit discussions, negotiations, court litigation, or post-suit matters on behalf of or in the name of the Association * * * without the express written authorization of the President and CEO and General Counsel.

(NAACP Bylaws, Article II, Section 2(b).)

{¶ 17}  Additionally, on September 12, 2013, Williams filed a legal complaint against Howell in the Franklin County Municipal Court, Small Claims Division.  The NAACP constitution provides:

> The procedures contained in this Article shall constitute the sole means for resolving any dispute, claim, or complaint of the Board of Directors or of any member against the Association or any Unit, or any member or officer thereof. * * * A member who commences any external action, suit or proceeding, whether civil, criminal, administrative or investigative, against any of the foregoing, shall have his or her membership automatically revoked.

(NAACP Constitution, Article X, Section 4(a).)  Williams does not dispute filing the small claims complaint but asserts she did not need prior approval both because she construes

the complaint as personal and because she argues mediation is not litigation and thus does not fall within either Article II, Section 2(b) of the bylaws or the pertinent provisions of the NAACP constitution.

{¶ 18} Upon learning of Williams' filings in the Franklin County Municipal Court, the president and CEO of the NAACP, Benjamin Jealous, issued a letter to Williams suspending her membership on September 13, 2013. The letter detailed for Williams that she had the right to request a hearing. Pursuant to Article X, Section 6 of the NAACP bylaws:

> Where a hearing is requested by the respondent, the National Office through the President and CEO or his designee, shall cause a hearing to be held by a panel of three members of the Board of Directors. The panel shall be appointed by the Chairperson of the Board's Committee on Membership and Units. The hearing panel shall convene within sixty (60) calendar days, of the receipt of the complaint or as soon as possible thereafter, and conduct a hearing according to the hearing procedure.

(NAACP Bylaws, Article X, Section 6.) Additionally, Article X, Section 7 of the bylaws provides "[t]he hearing panel shall review the written record and may allow oral argument by the parties or their spokesperson."

{¶ 19} The hearing occurred on February 4, 2014 via telephone conference. Gill Ford, the chairperson of the Board's Committee on Membership and Units, convened a three-person panel that included Adora Nweze, Carolyn Coleman, and James Crowell. Though Williams has argued throughout her proceedings that it is her recollection that only two hearing panelists were present for her hearing, Nweze, Coleman, and Crowell all averred they were present for and participated in the hearing. Ford also averred in his affidavit that all three hearing members were present for the hearing. The panel gave Williams the opportunity, through her spokesperson, to present an oral argument. After Williams' spokesperson's oral argument, the panelists deliberated and decided to uphold the suspension of Williams' membership.

{¶ 20} In a February 19, 2014 letter, the NAACP advised Williams of the panel's decision affirming her temporary suspension and recommending a three-year suspension.

The bylaws provide for the opportunity to appeal a decision of a hearing panel. Specifically, Article X, Section 6 of the bylaws provides:

> Should either party file an appeal to the National Office, the President and CEO or his designee shall cause an appellate hearing to be held by the Board of Directors. The panel shall be appointed by the Chairperson of the Board's Committee on Membership and Units.

Further, Article X, Section 7 of the bylaws provides:

> Appeals shall be based only on the written record. * * * The appellants may be represented by oral argument by counsel or another person of their choosing. The parties may not present documentary evidence or testimony, but rather speak only from the written record before the panel.

Williams pursued an appeal, and Ford convened an appeal hearing panel. Following the appeal hearing, the appellate panel upheld Williams' suspension, notifying Williams of the decision in a May 19, 2014 letter.

{¶ 21} The undisputed evidence demonstrates that the NAACP followed the procedures outlined in its constitution and bylaws when it issued Williams' preliminary and final suspension. Though Williams has made various arguments throughout this litigation about the perceived fairness of these processes, she does not identify any action by the NAACP that would amount to a breach of its contract with Williams as created under the constitution and bylaws. Williams continues to insist that her discipline was based on an erroneous factual determination by the NAACP that her filing for mediation constituted initiating litigation. However, NAACP Bylaws, Article II, Section 2(b) expressly prohibits a member from initiating "legal action" without prior authorization, which explicitly includes pre-suit discussions and negotiations. Even with Williams' dubious factual premise, the undisputed facts demonstrate that Williams was given the opportunity to argue the merits of her suspension and present her argument regarding whether mediation constitutes "legal action" in the procedures before the NAACP's hearing panels.

{¶ 22} The Civ.R. 56 provided to the trial court establishes that Williams agreed to follow the NAACP's rules outlined in the constitution and bylaws. The NAACP then initiated disciplinary action against Williams pursuant to its contract with Williams.

Williams does not identify a breach, and, as such, the trial court did not err in granting the NAACP's motion for summary judgment on Williams' claim of breach of contract.

### B.  Breach of Implied-in-Fact Contract and Promissory Estoppel

{¶ 23}  Williams next argues the trial court erred in granting summary judgment to the NAACP on her claims of breach of implied-in-fact contract and promissory estoppel.

{¶ 24}  "It is generally agreed that there can not be an express agreement and an implied contract for the same thing existing at the same time." *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954).  Here, the parties agree that a contract exists between them regarding Williams' membership with the NAACP based on the NAACP's constitution and bylaws.  Accordingly, as there is an express agreement between the parties, the quasi-contractual claims of breach of implied-in-fact contract and promissory estoppel are barred.  *Id.*; *Kashif v. Cent. State Univ.*, 133 Ohio App.3d 678, 684 (10th Dist.1999) ("where a written contract is properly determined to be unambiguous, the trial court does not err in entering summary judgment, barring the promissory estoppel claim"), citing *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 440-41 (1996).  The trial court did not err in dismissing these claims and granting summary judgment in favor of the NAACP.

### C.  Breach of Implied Covenant of Good Faith and Fair Dealing

{¶ 25} Williams also presented a claim for breach of an implied covenant of good faith and fair dealing.  "[U]nder Ohio law, 'there is an implied duty of good faith and fair dealing in every contract.' " *CosmetiCredit, LLC v. World Fin. Network Natl. Bank*, 10th Dist. No. 14AP-32, 2014-Ohio-5301, ¶ 35, quoting *Am. Contr.'s Indemn. Co. v. Nicole Gas Prod., Ltd.*, 10th Dist. No. 07AP-1039, 2008-Ohio-5056, ¶ 13.  Good faith is "a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc.* at 443-44.

{¶ 26} However, " '[a] claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing.' " *Gianetti v. Teakwood, Ltd.*, 10th Dist. NO. 15AP-413, 2016-Ohio-213, ¶ 35, quoting *Krukrubo v. Fifth Third Bank*, 10th Dist. No. 07AP-270, 2007-Ohio-7007, ¶ 19.  Having already determined that Williams failed to establish a breach of contract, she necessarily also failed to establish a breach of the duty of good faith and fair dealing.  *Id.*, citing *Krukrubo* at ¶ 19; *Interstate Gas Supply,*

*Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 98 ("an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim").  Thus, the trial court did not err in granting the NAACP's motion for summary judgment on Williams' claim for breach of an implied covenant of good faith and fair dealing.

### D.  Intentional Infliction of Emotional Distress

{¶ 27}  Finally, Williams argues the trial court erred in granting summary judgment to the NAACP on her claim for intentional infliction of emotional distress.

{¶ 28}  "A defendant is liable for intentional infliction of emotional distress if his 'extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another.' " *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, ¶ 56, quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369 (1983), syllabus, *abrogated on other grounds, Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451.  To constitute "serious emotional distress," the emotional injury must go beyond "merely trifling disturbance, mere upset, or hurt feelings." *Ford Motor Credit Co.* at ¶ 56, citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). Instead, the emotional injury must be so debilitating and severe that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case."  *Paugh* at 78.  "Serious emotional distress includes traumatically induced neurosis, psychosis, chronic depression, and phobia." *Ford Motor Credit Co.* at ¶ 56, citing *Paugh* at 78.

{¶ 29}  Williams has not alleged, much less provided Civ.R. 56 evidentiary support, of conduct on behalf of the NAACP that would rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  (Internal quotations omitted.)  *Meminger v. Ohio State Univ.*, 10th Dist. No. 17AP-489, 2017-Ohio-9290, ¶ 15, citing *Yeager* at 374-75.  The evidence presented in support of summary judgment demonstrated that the NAACP took action against Williams for conduct expressly prohibited by the constitution and bylaws, and the NAACP followed the procedures outlined in those documents in taking said action.

{¶ 30} Williams continues to assert that the loss of her position as president and the suspension of her membership with the NAACP has caused her emotional pain. Such allegations without more, however, are insufficient to create a genuine issue of material fact on a claim of intentional infliction of emotional distress. *See Meminger* at ¶ 16 (noting "[a]n employer's termination of employment, without more, does not constitute the outrageous conduct required to establish a claim of intentional infliction of emotional distress, even when the employer knew that the decision was likely to upset the employee," and "an employer is not liable for a plaintiff's emotional distress if the employer does no more than insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress") (internal quotations omitted). Accordingly, the trial court did not err in granting summary judgment to the NAACP on Williams' claim of intentional infliction of emotional distress.

{¶ 31} After a thorough and independent review of the record, we agree with the trial court that reasonable minds could only conclude that the NAACP did not breach its contract with Williams created by its constitution and bylaws, and there remains no genuine issue of material fact on any of the claims Williams put forth. Accordingly, the trial court did not err in granting the NAACP's motion for summary judgment. We overrule Williams' first, second, third, fourth, fifth, and sixth assignments of error.

## IV. Appellees' Assignment of Error – Motion for Sanctions

{¶ 32} In their sole assignment of error, the NAACP and Edwards-McNabb argue the trial court erred in denying its motion for sanctions. More specifically, appellees assert the trial court erred in failing to even consider its motion for sanctions on the erroneous basis that the issue was moot since the case had reached a final judgment.

{¶ 33} Appellees' motion for sanctions was premised on the trial court's express authority to sanction under Civ.R. 11 and R.C. 2323.51. Civ.R. 11 provides that the signature of an attorney on a pleading, motion, or other document of a party "constitutes a certificate by the attorney * * * that the attorney * * * has read the document; that to the best of the attorney's * * * knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." "For a willful violation of this rule, an attorney * * * may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule." Civ.R. 11.

When reviewing an alleged violation of Civ.R. 11, the trial court "must consider whether the attorney signing the document has read the pleading, harbors good grounds to support it to the best of his or her knowledge, information, and belief, and did not file it for purposes of delay." *Bennet v. Martin*, 10th Dist. No. 13AP-99, 2013-Ohio-5445, ¶ 33.

{¶ 34} Pursuant to R.C. 2323.51(B)(1), a court may "award [ ] court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal * * * to any party to the civil action or appeal who was adversely affected by frivolous conduct." "Frivolous conduct" is defined to include conduct that: (1) serves merely to harass or maliciously injure another party to the civil action; (2) is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law; (3) consists of allegations or other factual contentions that have no evidentiary support or are not likely to have evidentiary support after a reasonable opportunity for further investigation; (4) or consists of denials that are not warranted by the evidence or are not reasonably based on a lack of information or belief. R.C. 2323.51(A)(2)(a).

{¶ 35} An appellate court will not reverse a trial court's decision to grant or deny a request for sanctions pursuant to Civ.R. 11 or R.C. 2323.51 absent a showing that the trial court abused its discretion. *Brust v. Franklin Cty. Sheriff's Office*, 10th Dist. No. 16AP-502, 2016-Ohio-7876, ¶ 9; *Vineyard Christian Fellowship of Columbus v. Anderson*, 10th Dist. No. 15AP-151, 2015-Ohio-5083, ¶ 41.

{¶ 36} Here, appellees filed their motion for sanctions on February 23, 2018, prior to the trial court's ruling on the pending motions for summary judgment. Appellees' alleged in their motion for sanctions that Williams and her counsel violated discovery orders by providing knowingly false interrogatory answers and produced fabricated evidence. Rather than consider the merits of appellees' motion, however, the trial court issued a decision and entry on May 15, 2018, the same day it ruled on the motions for summary judgment, stating it had "no reason to consider sanctions" since the court had issued a final decision in favor of appellees. (May 15, 2018 Decision & Entry.)

{¶ 37} A motion for sanctions is considered collateral to the underlying proceedings, and a trial court retains jurisdiction to consider a motion filed pursuant to Civ.R. 11 and R.C. 2323.51 even where the action is no longer pending. *Capitol Mtge. Servs., Inc. v.*

*Hummel*, 10th Dist. No. 01AP-1104, 2002-Ohio-4301, ¶ 61, citing *Indus. Risk Insurers v. Lorenz Equip. Co.*, 69 Ohio St.3d 576, 580 (1994). We find it was error for the trial court to fail to even consider appellees' motion for sanctions simply because the trial court had issued final judgment in favor of appellees. *See Sain v. Roo*, 10th Dist. No. 01AP-360 (Oct. 23, 2001) (stating "because a motion for sanctions is collateral and independent of the primary action, a trial court retains jurisdiction to entertain a motion to impose sanctions under R.C. 2323.51 even after dismissal of the action"). Accordingly, we sustain appellees' sole assignment of error, and we remand this matter to the trial court for the limited purpose of considering appellees' motion for sanctions.

## V. Disposition

{¶ 38} Based on the foregoing reasons, the trial court did not err in granting the NAACP's motion for summary judgment on Williams' claims of breach of contract, breach of implied-in-fact contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and intentional infliction of emotional distress. Additionally, the trial court erred in denying appellees' motion for sanctions without first considering the motion. Having overruled Williams' six assignments of error and having sustained appellees' sole assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

KLATT, P.J., and DORRIAN, J., concur.